May it please the court, John Idale, I'm from Baton Rouge represent Thomas Nelson in this proceeding and from the outset I need to advise the court and I'm gonna apologize before I say this because I should have made this decision sooner but I'm gonna give up on my McDonnell argument and abandon that claim I believe I should have done it sooner and I apologize for causing everybody and I've already apologized to miss Jones causing y'all extra work but I believe that the claim had been procedurally defaulted I will address the ineffective assistance of counsel argument and only judge this case both sides say this counsel it may well be the right thing for you to have done I need to think through that but regardless late late assertion of what you now see is as the proper conduct is is appreciated it's fine that you have made that assertion here today and abandoning the McDonald and the timing of it is is not a worry to the court thank you judge I what I was stymied then and I'm still stymied so it's time to give up on that but thank you judge the ineffective assistance of counsel argument and miss Jones is very forthright in both her briefs that she wrote in the lower court after the evidentiary hearing and in her brief to this court that Mr. Pate was ineffective and I'm not going to recite all the different ways but in a nutshell that he didn't advise Nelson of the pros and cons of accepting this plea agreement which was very advantageous what extent should we consider the entirety of the advice that the defendant receives because he did have the other two attorneys which as I understand your argument mr. Nelson would have been well served to take their advice as opposed to this counsel shouldn't we consider the advice of counsel to be all of his counsel leading up to the time of his conviction if your honor please I think that Pate had a duty from the get-go his when he wrote the letter of July 2nd he he should have wrote it not knowing what he was doing but that doesn't answer the issue of causation causation and prejudice may not be proven as of July 2nd game-changer on July 7th Pate wrote to Mr. Nelson's father an email that his son would be indicted the next day and he would meet him in Louisiana and they actually did meet the following day on July 7th he forewarned him that an indictment would issue an indictment did issue on July 7th and it didn't say loss in it but it said that Nelson was involved in transactions that were over six million dollars and the trial judge in sentencing him I think it was six point three million and it was over two and a half million so it put him in the 235 to 293 so the stakes were higher then the threat of if you don't take the plea bargain is different because something worse is going to happen then the thing aren't happening the second thing that happens and I think this is the whole crux of my argument is Pate says he got hired on July 1st even though he had been talking to him before that in June Pate didn't have any notes to produce memorandum and I'm not faulting him for that but it's just either not available or he wasn't doing it at the time but he meets with Nelson and his father and the father is the one that's funding both sets of lawyers is what Mr. Nelson, Tom Nelson Sr. testified to he tells them two things he tells them one that Ollie Pearson, Fred Kafassi negotiated plea bargain deal was bad horrible word to say bad deal and he then tells them the magic words that every person on the verge of going to prison and maybe even more so the parents because parents sometimes are more protective of the children than the children are themselves they weren't here he says I can win the case based on I don't know I haven't investigated the case Kafassi and Pearson they spent about a month and they did an intensive investigation I shouldn't say intensive but the government even gave them FBI 302 summaries under the understand that they had to return them which they did and so they had the confession that Nelson had given they have the timeline of the different events the different transactions and there was a gap in the four or five thousand dollar payments that came in May I believe of 2010 where the investigation started in 2008 so even though he may not have been the government had never been I don't know baiting him or whatever with this fictitious company staying at that time he's the one that then solicited the later on two years later and then in 2010 and so to say I can win on entrapment was just wrong if he would have said I don't know and I didn't put Mr. Nelson on the stand and Ollie Pearson was not called and there were tactical reasons that Ollie Pearson was called by the government in the case in chief to state that the plea agreement and that's where the stipulation of facts the poison pill as Ms. Jones so that's a great term for it where the stipulation of facts that's built into the plea agreement has an essence of confession and that was argued in closing argument by Ms. Jones and the initial close by the government and on rebuttal by Mr. Amundson and entrapment I think is a thing about the case to then advise both Nelsons this is a bad deal I can win the case and what I'm trying to say your honor with respect to your question about about causation if Pate wouldn't have detoured them off of the Pearson-Crofassi deal I think that there's a reasonable probability that he would have pleaded guilty as a reason now there's a couple of isn't that I mean at some point I guess I'm trying to understand the argument that the defendant controls the case the defendant makes the decision happens every day in both state and federal courts where a defendant says well I accept this deal I will plead to X Y & Z terms or no I choose to go to trial I'd like to have a jury hear my case and make a decision render a verdict based on the evidence and in this case Mr. Pate you say he was uninformed about the case and he made a recommendation about the entrapment defense possibly being probably being successful he had a lot of confidence in the case and we know that happens every day too where defense lawyers take their best shot on behalf of their clients clients get convicted that doesn't rise to the level of two other lawyers Miss Pearson who's a very accomplished attorney and Mr. Crofassi also fairly experienced attorney who are telling him this discussing the entrapment defense and telling him this is a good deal and you should accept it and then on top of that his father's an attorney and I don't know what area of the law his father practices maybe it's an unfair implication but at least his father was there as an advisor who had some legal education enough to be a licensed attorney why does this level of Mr. Pate's advice in this case rise to the level of overall ineffective assistance of counsel just because he was mistaken why should the court grant relief to Mr. Nelson on the basis of ineffective assistance of counsel well he gave them wrong advice that was uninformed I've already stated that but let me move on to the July 12th letter that Mr. Amundson once the indictment occurs I think it would have been safe I would have assumed at least that negotiations were over plea bargains out they're gonna you're gonna get tried by the government but surprising at least to me Mr. Amundson writes a letter to the trial judge to whom the Bill of Information was was allocated Judge and it states that we'd like for the court to schedule an arraignment and that was scheduled on eventually on August 3rd and to give Mr. Nelson an opportunity in open court where everybody can see that he's knowingly intelligently making making a decision and Miss Jones and I stipulated in the had he waived indictment that's how the Bill of Information eventually got dismissed on Pate's local council's motion in late July because he wouldn't agree to waive indictment but she stipulated the government stipulated that if if he would have pled guilty on August 3rd that he could have still under an indictment now with a potentially six million dollar loss and I recently didn't know that didn't stick with the Court of Appeals eventually they've stipulated was 400 to a million was the value on remand but you you got it he's paid has to take another look at it and tell the client your exposure has ratcheted up from what it what it was and I think I used three and a half times I did the math again using the minimum sentences and Miss Jones's calculation actually at 36 to 47 months I believe this is correct and so I'm coming up with six and a half times a greater sentence with that increased value and so I don't think we can look at it and just a snapshot it's a July 2nd I think and basically what I'm saying is is that he gave uninformed advice on July 2nd so say he gets a pass for that even though both Miss Jones and I have both written to the contrary but events change on July 7th and then on July 8th he testified that when he got that later I didn't give it I didn't give it much thought and he was under the impression and I'm not sure this is kind of what your honor might be thinking that once Nelson decided to to try it that he didn't have to I think his words were push back on the defendant to change his mind well the testify that he got hired on July 1st and I can't tell you if there was any communications but if he got hired on July 1st I think it's a reasonable inference that the same type conversation would have taken place for him to get hired to begin with and he wouldn't have gotten funded do we know what day in particular and by what vehicle Miss Pearson and Mr. Kruseffi were terminated did they get a letter from Mr. Nelson saying I'm switching counsel or were they still involved in the background I think it all kind of went on on July 1st and July 2nd well but when you say it all went on I understand what happened what I'm asking is when did their turn your argument is that Mr. Pate got involved and he's the one who rendered the ineffective assistance and he's the one Mr. Nelson was depending on at that time what happened to his prior counsel were they terminated officially or were they just told to get stay in the background I'm here to try the case how did that go down I believe they were terminated the record's not clear on that the memorandum that were introduced that were generated by now Judge Krafassi it doesn't have a determination it ends in like late June I think maybe with the signing of the plea agreement with Miss Pearson it doesn't state that and so all we have in the record is Pate getting hired on July 1st and I think a reasonable would be that that would have been at least by that they were off the case by that time but again they never would excuse me we'll hear from you again we've heard your name a few times already but you get to respond now thank you your honor may it please the court my name is Tricia Jones and I represent the United States let me begin by addressing an issue that I neglected to address in my brief which is the issue of remedy the defendant argues in his brief that the proper remedy should this court find ineffective assistance of counsel is to vacate the convictions and sentence and to remand the matter for resentencing as if the plea agreement had been entered into but that's not the correct remedy according to the Supreme Court in Lafler versus Cooper the correct remedy is for this court to order the United States to re-offer the plea agreement and to remand the matter and should the it will be at the discretion of the district court whether to sentence the defendant according to the plea agreement alone or and vacate all of the trial convictions and sentences or to vacate some or none of the trial convictions and recent the defendant accordingly so most of the discretion here is still with the district court and some of these are all of the trial convictions may remain in effect even if the court does find ineffective assistance of counsel in the rejection of the plea agreement make sure I understand the issue that Mr. Nelson is raising it does seem to me if what this case now boils down to is a ruling on ineffective assistance of counsel the only ruling we have is that there was no causation no prejudice from the final counsel is that correct this does come down to whether that is a legitimate fact-finding that's what it comes down to if it is a legitimate fact-finding we have the standard you can probably recite it as to how we review fact findings it does seem to me that there is it's a very difficult analysis to make of what role did this advice have in the decision that was made by Mr. Nelson that proved to be so harmful to his interest what is the biggest shortfall would you say in the evidence of why it is proper to say that there's not enough there for prejudice what's missing the district court made three particular fact findings that I think are well supported by the record and those essentially are the shortcomings in the defendant's case because you can't show that they're clear error first off is the district court found as a matter of fact that when the defendant hired Mr. Pate he simply did not wish to matter what kind of advice he would have received from Mr. Pate about pleading guilty we know that he already received good advice he would not have pled guilty and I cited the white case an unpublished case from this circuit in my brief that was similar there the defendant got inadequate advice from his defendant and passed up a plea agreement but because the record supported that the defendant was adamant about going to trial the court held that there was no prejudice respond to this it strikes me one way to view this evidence is that there is a defendant who was just desperate for somebody to tell him that he can get out of this that his whole life as he thought it was going to play out isn't going to play out that way and he's agreed by this legitimate advice when overstated but by the vice of his first to counsel I'm sorry your life is the way you wanted to play out it's not going to happen and then here comes a lawyer and say I got your back and all this is quite likely going to work out and that is very hard to overcome maybe and that's one way to view the evidence you got in response to that sense of what this case is really about your honor I I agree with you to some extent I think he was desperate to go to trial and to to have this all go away and not and not actually get in court and say I'm guilty but I think even if mr. Pate had told him you know what this is a good deal he still he would have found another lawyer he he was desperate and he was going to find somebody to take the case to trial and to me found somebody ineffective enough to tell me had a chance to win is one way to look at what you're saying perhaps your honor I think it was bad judgment on his part and and he was definitely reluctant to enter a plea and even even from the beginning even he agreed to it but he didn't authorize its submission to the government he started telling he went to see the executive director of the National Conference of Black Mayors to try to convince her to help him to somehow avoid prosecution in a political manner and that information came out at to go to trial now and even if his his counsel had given good advice and said even if he had stayed with mr. Pate mr. Pate might have said look I don't know enough about it I need more time let's look into it you know it's your choice these are the the consequences all of the stuff that miss Pearson and mr. Kravatsky had already told him and then said but it's your decision and if you take it to trial I'm a fantastic trial attorney and I will get you off and he is an excellent trial attorney I I don't think he would have entered that plea that the evidence you know from every point from from his own father who had to call him to tell him to to authorize it to mr. Pate himself who said when he came he came ready to go to trial to the the evidence at trial about his machinations to avoid prosecution at the same time period when he was getting out of the plea agreement the second the second fact finding by the district court that I think is important in showing there's no prejudice and and judge Inglehart has brought this up in particular is that the defendant was already properly advised and and he understood the plea agreement and the district court found both of those things and both are supported by the evidence mr. Kravatsky and miss Pearson did everything that competent counsel would do in the six days between when mr. Amundsen offered the plea agreement and when mr. Nelson verbally agreed to enter the plea agreement they had meetings they had phone calls they looked into the evidence into the defenses they talked about the increased value I mean this the idea that the six million dollar value was something brand new on July 7th when the indictment came down is not true the prosecution said look this was about business worth millions of dollars and you are getting a great deal by a $22,000 valuation on this bribery activity because we could it could be millions and that was something that mr. Kravatsky and miss Pearson had already discussed with the defendant that the defendant already knew about the poison pill provision he already knew that the government had gone so far as to agree to file a 5k motion not just to consider a 5k motion but to agree to file a 5k motion they they inquired about entrapment they talked to the defendant about that they let defendant listen to one of the tapes they they they did what they needed to do the research the sentencing guidelines and although mr. Kravatsky made a mistake about the initial base level guideline it actually should have induced mr. Nelson to be more interested in pleading than less interested in pleading because they thought it would be only an 18 month sentence and finally I'm not sure if the defendant is relying anymore on his declaration about if I had been advised that the sentence was 24 to 30 months I would have entered a would have done he did not take the stand we don't have anybody who heard him talking about what he would have done had he gotten the good advice so the only direct evidence is that declaration and the declaration itself is not credible because defendant is not credible also because it's not credible to say that you would plead to 24 to 30 months but you wouldn't plead to 18 months that doesn't make any sense it's not credible because of all the other things he said in the declaration that were not true and of course it's my guess that that's why mr. Nelson didn't take the stand at the hearing because his declaration was so filled with untruths there were numerous numerous instances of defending talent untruths at during the investigation and that evidence came out at trial so that the declaration simply cannot be believed and at bottom your honor it is the defendant's burden to prove the reasonable probability that he would have entered the plea had he gotten different advice from mr. Pate and he just has not satisfied the burden most of the evidence tends to show that he just wanted to go to trial that's what the district court found and I don't see how the court can find that that's a your honors have additional questions that would complete my argument thank you address the first contention that miss Jones just stated about in LeFleur that it was up to the court and therefore the district federal district court in this case the floor was a main state court prosecution and decide the same day Missouri vs. Frye both state court cases and I believe in Missouri vs. Frye when they remanded it it was like in accordance with state law so the I think the remand to federal district court of course would be federal law would would govern the proceeding so I would urge that if the court were to agree with me that all the counts they was convicted of we vacated he'd be up for the opportunity to plead it and then I believe miss Jones is correct it would be up to the trial judge I suppose to accept it but I don't see how he couldn't in in this scenario the argument about the trial fact making findings despite five pages of expansive description that miss Jones made in their post hearing memorandum with the district judge the district judge nonetheless found that there was no ineffective counsel present and that was not not proven which is contrary to all the facts of the case and the law I agree with miss Jones that that it's July 2nd and in response to the question about whether you can basically use as a substitute the advice of profanity and Pearson and that's the same thing that I argued earlier about the pushing back from the government's the post trial memorandum brief and it states in part that paid is not confident he provided defendant with any advice regarding the plea agreement before he communicated to the government the defendants refusal to plead guilty at one point he acknowledged he didn't think he advised the defendants of the consequences of the breach prior to notifying the government that he was withdrawing and then it goes on to say that apparently he thought it was not in the government wrote but that's a poor excuse for facilitating defendants breach of the plea agreement ensuring that he understood it and the trial judge's findings that there was no that paint was in essence effective if you don't answer that question in the affirmative how can you properly analyze whether he was prejudiced and again I'll go back to the game-changing events on July 7th and that he didn't tell him about the the once he had this in super increased exposure under the July 7th indictment he does nothing and the government the third paid admitted admittedly provided defendant with no advice regarding the wisdom of not pleading guilty at the arraignment on the Bill of Information which was August 3rd and as they go on to say that essentially it was a plea offer and yet he gave him no advice and didn't even inform him that the plea agreement was was out there so to me that's clearly ineffective counsel and the trial judge can't say well he wasn't prejudiced by anything because he didn't do anything wrong you have to look at and again 35 seconds I better conclude thank you very much do you have any more questions yeah thank you counsel thank you both for your help in our understanding of this case this is the final argument for this morning we are in recess